## TEXAS EMPLOYERS' INS. ASS'N v. JONES et al.

### No. 9316.

Court of Civil Appeals of Texas.
San Antonio.
April 18, 1934.

Rehearing Denied May 16, 1934.

Eskridge & Groce and Geo. S. Rice, Jr., all of San Antonio, for appellant.

Hull & Oliver, of San Antonio, for appellees.

MURRAY, Justice.

This suit was instituted in the district court by appellant, Texas Employers' Insurance Association, for the purpose of setting aside an award made to appellee V. L. Jones by the State Industrial Accident Board. Appellee replied by filing his cross-action, and upon a trial before a jury he was awarded a judgment in the sum of $7,327.44, from which judgment appellant has prosecuted this appeal.

Appellee V. L. Jones was totally and permanently injured while doing concrete form work on the Thomas Jefferson High School building. Walsh, Burney & Key were the general contractors on this job, and the cement form work was being done by Elmer Sigler Company, a corporation, under a contract in which Elmer Sigler Company was described as the subcontractor. The Southern Surety Company was the carrier of the workmen's compensation insurance of the general contractor, and appellant, Texas Employers' Insurance Association, was the carrier of the workmen's compensation insurance of Elmer Sigler Company; the policy covering all work done by this company in the state of Texas.

Walsh, Burney & Key were able to secure workmen's compensation insurance at a lower rate than Elmer Sigler Company, and so it was decided between the two contracting companies that the general contractor should carry all of the insurance on all the employees on the job. It was attempted to carry this agreement into effect by attaching a rider to the policy of Walsh, Burney & Key, through an indorsement which reads as follows:

"Endorsement

"Effective October 15, 1930.

"Not valid unless countersigned by a duly authorized agent.

"It is understood and agreed that this policy is extended to cover work done on cost plus basis by Elmer Sigler Company in connection with this construction of senior high school building at San Antonio, Texas, exclusively.

"Subject otherwise to all conditions, agreement and limitations of the policy as written, except as herein specifically provided.

"Attached to and forming part of Policy No. UF—301—515097, issued by Southern Surety Company of New York to Walsh, Burney & Key, of San Antonio, Texas.

"Countersigned at San Antonio, Texas, this 7th day of November, 1930.

 "Coleman & Co. Authorized Agent.
 "F. V. Kurth, President.

"[Stamped] Received Nov. 8, 1930, Casualty Insurance Commissioner, Austin, Texas.
 "Coleman & Co., Gen'l Agents,
 "11th Floor Alamo Nat'l Bank Bldg.
 San Antonio, Texas."

The insurance commissioner rejected this indorsement and declined to approve the same.

After this indorsement was rejected by the insurance commissioner, the two contracting companies and the two insurance companies got together and agreed among themselves that the Southern Surety Company should be regarded as the carrier of the workmen's compensation insurance of the men engaged in the concrete form work on this school building and should be entitled to the premiums, and under this agreement the Southern Surety Company collected all the premiums on this job and appellant did not receive any premiums from Elmer Sigler Company covering men engaged in concrete form work on this building. However, this last agreement seems to have been entered into in November, 1930, while appellee V. L. Jones was injured in October, 1930.

When Jones was injured, the Southern Surety Company acknowledged its liability, agreed that Jones was permanently and totally injured, paid all of his doctor and hospital bills, and further paid him compensation at the rate of $20 per week for a year and a half, when the Southern Surety Company became insolvent and was unable to continue its payments.

Appellee then employed lawyers who at once filed a claim against appellant, Texas Employers' Insurance Association, and secured from the Industrial Accident Board an award against appellant at the rate of $20 per week for a period of 401 weeks. The judgment in the district court was in effect to sustain this award, only a lump sum settlement was given instead of a weekly payment.

Appellant contends that appellee did not show a good reason for not filing his claim with the Industrial Accident Board within the six months required by law. Appellee

testified that the Southern Surety Company acknowledged liability in his cause, paid his doctor and hospital bills, and allowed him compensation in the maximum amount of $20 per week and paid same for a year and a half, at which time it went into the hands of a receiver and stopped payments; that by this action of the Southern Surety Company he was lulled into a feeling of security and did not know that the true carrier of his workmen's compensation insurance was appellant until the payments ceased by the Southern Surety Company, and then for the first time he discovered what he contends the true facts were, and immediately filed his claim with the board.

 This question was submitted to the jury in special issue No. 2 of the court's charge in the following form:

"Do you find from a preponderance of the evidence that V. L. Jones had a good cause for not filing his claim with the Industrial Accident Board prior to April 9, 1932. Answer 'Yes' or 'No.'

"By the term 'good cause' is meant such a cause as would have excused a man exercising ordinary care situated as V. L. Jones was situated after the accident and prior to April 9, 1932, from filing a claim for compensation with the Industrial Accident Board."

We conclude that the evidence raised the issue and that the question and instruction were in proper form and met the requirements of the law.

█ Appellant next complains of the action of the trial court in refusing its specially requested issue, which would have asked the jury whether or not the policy issued by appellant to Elmer Sigler Company had been canceled as to this high school building. It was contended that this policy had been canceled as to this job by an oral agreement between the two insurance companies and the two contractors, but this action had not been authorized by the commissioner of insurance.

We conclude that, where an insurance company issues to a contractor a policy of insurance covering its employees engaged in the general business of the contractor throughout the state, such policy cannot be canceled as to a particular job except by a written indorsement approved by the commissioner of insurance of Texas. This is the provision of article 4913, R. S. 1925, which reads as follows:

"Art. 4913. Uniform policy

"The Commission shall prescribe a uniform policy for workmen's compensation insurance and no company or association shall thereafter use any other form in writing workmen's compensation insurance in this State, provided that any company or association may use any form of endorsement appropriate to its plan of operation, if such endorsement shall be first submitted to and approved by the Commission, and any contract or agreement not written into the application and policy shall be void and of no effect and in violation of the provisions of this chapter, and shall be sufficient cause for revocation of license to write workmen's compensation insurance within this State."

█ Appellant next complains of the trial court's refusal to give his second special requested issue, which was as follows: "Do you find from the preponderance of the evidence that Elmer Sigler Company was only a supervising agent of Walsh, Burney & Key on the Spanish Acres High School job?"

The Spanish Acres High School is now known as the Thomas Jefferson High School building. We do not think the court committed error in refusing to submit this issue. In the first place, it is an evidentiary issue having only a bearing on the ultimate issue which was whether or not V. L. Jones was an employee of Elmer Sigler Company. In the second place, the written contract between Walsh, Burney & Key, which was introduced in evidence and admitted to be the agreement between the general contractor and Elmer Sigler Company, shows on its face that Elmer Sigler Company was the subcontractor of Walsh, Burney & Key and was doing the concrete form construction upon a cost plus basis. It is true that this contract contained the following sentence: "It is understood that the General Contractor will furnish the supervision of all labor and pay for all labor." But this provision, when construed in the light of all the provisions of the contract, is not sufficient to constitute the subcontractor, which was a corporation engaged in the business of concrete form construction, a mere supervising agent.

█ Appellant complains of the definition of an employee as given by the court in connection with special issue No. 1 of the court's main charge; the definition was as follows: "You are instructed that the term 'employee' as used in this charge is defined to mean every person in the service of another, under any contract of hire, expressed or implied, oral or written, and except one whose employment is not in the usual course of trade, business, profession or occupation of his employer."

We conclude this definition was correct. It is the definition given in the statutes, article 8309, § 1, R. S. 1925, and is all that is required, and we find nothing in the evidence or circumstances surrounding this cause that would call for any other or further definition of the word "employee."

■ The appellant also complains of the court's action in permitting appellee, while on the witness stand, to testify that he was working for Elmer Sigler Company, as this would be a question of law, or at least a mixed question of law and fact. We cannot agree with this contention. Appellee testified to many facts concerning his work on the Thomas Jefferson School building, and, having stated these facts, we think it was proper for him to make a shorthand rendering of all of these facts by stating in reply to a proper question that he was working for Elmer Sigler Company. For the same reasons we think it was proper for him to state that Bill Locke was Elmer Sigler's Company's foreman.

■ Appellant also complains that special issue No. 3, of the main charge was duplicitous and multifarious in that it combined four issues in one question. It is unquestionably error for a court to submit two or more separate issues in one question, but where one issue is composed of several component parts, or where it is necessary to limit, describe, or modify an issue, the rule as to duplicity and multifariousness does not apply.

The issue complained of was as follows: "Do you find from a preponderance of the evidence that there was a workman of the same class as V. L. Jones, doing the same class of work as he was doing at the time he was injured, working substantially the whole of the year immediately preceding October 29, 1930, employed in a neighboring place to the Thomas Jefferson High School?"

This issue submitted to the jury the standard of determining the average daily wages provided for in article 8309, R. S. 1925, § 1, numbered paragraph 2. To submit the matter in any other form would no doubt lead to confusion, and we find no objections to this issue as submitted. Neither do we think that there were any terms used in the question which required a definition by the court.

In this cause the evidence shows and the jury found, that appellee was an employee of Elmer Sigler Company and was engaged in the usual business of his employer at the time and place of the accident; that appellant was the carrier of the workmen's compensation insurance, not only for San Antonio, but for the entire state of Texas; wherefore appellee was entitled to recover, as he did, in the lower court.

■ Appellant complains that it never received any premiums for the Thomas Jefferson School job. This, however, is a matter between it and Elmer Sigler Company. The rights of the employee cannot be affected by the failure to pay or collect premiums.

We find no reasons for disturbing the judgment below or the findings of the jury upon which it is based.

All of appellant's assignments of error will be overruled, and the judgment of the trial court in all things affirmed.

### On Motion for Rehearing.

Appellant in its motion for rehearing contends that our decision herein is in direct conflict with Standard Accident Insurance Co. v. Barron (Tex. Civ. App.) 47 S.W.(2d) 380. We fail to see any conflict in the two opinions. In the Barron Case the policy of insurance by its express terms only covered the employees of the company which were employed in Houston, at its plant where the work of cutting and polishing stone was being done and expressly excluded employees engaged in the stone quarry located in Kinney county, some four hundred miles distant from the Houston plant. It is pointed out that the work of quarrying stone and cutting and polishing stone are two very different kinds of work and are not the same general business.

In the case at bar the Elmer Sigler Company had just one general business; that of concrete form work, and its employees were insured in appellant's company, which covered all of Elmer Sigler Company's employees in San Antonio, Dallas, Houston, Waco, or elsewhere in Texas. There is no written contract or agreement contained in the policy to the contrary, nor is there any written indorsement approved by the insurance commissioner attached to the policy, and article 4913, R. S. 1925, provides that all other agreements are void. Appellant points out that the insurance policy is not before us, but the record is too plain for doubt that any agreement affecting this policy was nothing more than an oral understanding between appellant and Elmer Sigler Company. The only agreement ever reduced to writing was the indorsement attempted to be placed on Walsh, Burney & Key's insurance policy carried by the Southern Surety Company, and which indorsement was disapproved and not permitted to stand by the insurance commissioner.

The Barron Case holds that an employer may insure all of his employees engaged in one line of business and by the expressed terms of the policy exclude certain other employees engaged in another and different business. In the case at bar we hold that a company which has insured all of its employees engaged in its general business in the state of Texas with a certain company cannot, by a private oral agreement, exclude a part of its employees from the benefit of such a policy.

The Supreme Court, in denying an application for a rehearing upon application for writ of error, in the Barron Case, 53 S.W.(2d) 769, 770, said: "The rule is well established that employers of labor operating under the Workmen's Compensation Act cannot cover part of their employees and leave part of them uncovered, where such empoyees are engaged in the same general business or enterprise, and a policy issued thereon will cover all employees in such business. Case of Cox, 225 Mass. 220, 114 N. E. 281; Reports Opinions of Attorney General 1916–1918, p. 321."

Appellant's motion for a rehearing will be overruled.